UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-007750-RGK | Date | April 20, 2022 |
|---|---|---|---|
| Title | *In Re: Yu Hua Long Investments, LLC, et al.* | | |

cc: Bankruptcy Court and BAP

---

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Appeal from Bankruptcy Court's Order Reducing Appellant's Claim No. 15 [DE 17]

## I. INTRODUCTION

This appeal arises out of a bankruptcy court's order reducing claimant Teng Huang's ("Appellant") claim by $29,880,000.

Debtor filed a Chapter 11 bankruptcy case on September 26, 2016. Appellant filed four proofs of claim, only one of which—Claim No. 15—is at issue in this appeal. Claim No. 15 totals $49,565,920.08. Several other claimants in the bankruptcy case ("Appellees" here) filed a motion to reduce Claim No. 15. After two hearings on December 15, 2020 and August 5, 2021, the bankruptcy court: (1) reduced Claim No. 15 by $1.9 million because it was duplicative of Appellant's Claim No. 17; and (2) then reduced Claim No. 15 by an additional $29,880,000 because it found Debtor was not unjustly enriched by Appellant in that amount. Appellant filed a Notice of Appeal on September 1, 2021, and Appellees elected to have the appeal heard by this Court on September 28, 2021.

For the following reasons, the Court **AFFIRMS** the bankruptcy court's order.

## II. JURISDICTION

The Court has jurisdiction over this Appeal pursuant to 28 U.S.C. § 158(a).

## III. FACTUAL BACKGROUND

The following facts are based on the record on appeal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-007750-RGK | Date | April 20, 2022 |
|---|---|---|---|
| Title | *In Re: Yu Hua Long Investments, LLC, et al.* | | |

### A. Facts of the Case

The story of Debtor's bankruptcy begins in 2004, with a plan to develop a real estate project called the Monterey Park Towne Center (the "Project"). That year, the Project's initial investors formed an entity called Magnus Sunhill Group, LLC ("Magnus") to oversee the Project's business operations. Early-stage investors in the project included Mountainfield Properties, LLC, and Nelson Huang ("Nelson"), two of the Appellees here.

Appellant became involved in the project in 2009, after Nelson informed him that Magnus was seeking additional investors. Between July and October 2009, Appellant invested a total of $5.55 million, rendering him at least a 65% interest-holder in Magnus.[1] By 2011, both Nelson and Appellant were managers of Magnus, but Appellant "ran the company" due to his supermajority interest. (2 Excerpts of Record ("ER") 1227, ECF No. 17-3.) Magnus's managers at that time faced a crisis: Magnus had not been able to obtain certain properties necessary to develop the Project, rendering it unable to obtain construction loans. Appellant thus arranged for Magnus to borrow $15,000,000 from East West Bank (the "East West Bank Loan"). The loan had a one-year term and was guaranteed by another of Appellant's companies, Shaanxi Yuhualong Investment Group Company ("Shaanxi YHL"), along with six parcels of land that Magnus had previously acquired.

Magnus was unable to repay the East West Bank Loan when it matured and East West Bank threatened foreclosure. The Magnus managers developed competing plans in response. According to Appellant, Nelson hoped to purchase the notes and liens held by East West Bank, foreclose on the property himself, and then wipe out all other members' interests in Magnus. To head off Nelson's plan, Appellant arranged for yet another loan in 2013—this time, a loan of $30,000,000 from Nanyang Commercial Bank ("Nanyang" and the "Nanyang Loan"). Nanyang required security and asked for Appellant to provide a standby letter of credit in the full amount of the Loan. Appellant deposited $30,000,000 with his company Shaanxi, which then deposited the cash and letter of credit with Nanyang.[2]

Magnus paid the East West Bank loan with half of the Nanyang Loan, and then operated for another eighteen months using the remainder of the funds. Nonetheless, Magnus remained unable to

---

[1] The parties dispute whether Appellant had a 99% or 65% interest in Magnus. For the purposes of this Appeal, it is undisputed that he had a supermajority interest in the company.

[2] Appellant worked through Shaanxi due to Chinese currency regulations, which limit the amount of money an individual can transfer out of the country to $50,000. Those limitations do not apply to companies in China.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-007750-RGK | Date | April 20, 2022 |
|---|---|---|---|
| Title | *In Re: Yu Hua Long Investments, LLC, et al.* | | |

move forward with the Project. The Nanyang Loan came due in 2015, and Magnus defaulted. Upon default, Nanyang drew on Appellant's standby letter of credit, thereby keeping the $30,000,000.

By 2015, Appellant was Magnus's sole manager. In a last-ditch effort to save the Project, he arranged for Magnus to sell all of its assets and liabilities to Debtor. Debtor ultimately was unable to salvage the Project and filed for bankruptcy in 2016. Appellant and Appellees filed proofs of claim, one of which was Appellant's Claim No. 15 for $49,565,920.08. Subsumed within Claim No. 15 was Appellant's demand for the nearly $30,000,000 he put up as collateral on the Nanyang Loan. As described above, Appellees objected to this portion of Claim No. 15, and the bankruptcy court ultimately ruled in their favor, reducing the Claim by the amount Appellant deposited with Shaanxi YHL. This Appeal followed.

**IV.  QUESTION PRESENTED**

Whether the bankruptcy court erred in granting in part Appellees' motion to disallow Claim No. 15, reducing the Claim by the amount of the Nanyang Loan.

**V.  STANDARD OF REVIEW**

A bankruptcy court's decision to allow or disallow a claim is reviewed under the abuse of discretion standard. *See In re Woodcraft Studios, Inc.*, 2016 WL 4045379, at *5 (9th Cir. BAP July 22, 2016). Determining whether the bankruptcy court abused its discretion requires a two-part analysis. First, the reviewing court must "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (*en banc*). If the bankruptcy court correctly identified the applicable legal rule, the reviewing court then analyzes whether the bankruptcy court's factual findings were clearly erroneous; put another way, whether "the application of the correct legal standard [to the facts] was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotes omitted). The bankruptcy court therefore abuses its discretion if it: (1) uses the incorrect legal rule or; (2) applies the correct legal rule to the facts in a clearly erroneous manner.

Appellant does not argue here that the bankruptcy court used the improper legal rule when analyzing his Claim. His arguments revolve solely around the bankruptcy court's application of the facts. Accordingly, the Court looks only to whether the bankruptcy court's factual findings were clearly erroneous.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-007750-RGK | Date | April 20, 2022 |
|---|---|---|---|
| Title | *In Re: Yu Hua Long Investments, LLC, et al.* | | |

## VI.  DISCUSSION

In the proceedings below, Appellant argued that he was entitled to the relevant portion of Claim No. 15 under a theory of unjust enrichment—that he (indirectly, through Shaanxi YHL) provided a $30,000,000 benefit to Magnus and that it would be unjust to allow Magnus to retain that benefit. The bankruptcy court disagreed, holding that the "incidental benefit" exception to unjust enrichment operated to bar recovery.

If a party is unjustly enriched—i.e., receives a benefit at another's expense—that party must make restitution. *See First Nationwide Savs. v. Perry*, 11 Cal. App. 4th 1657, 1662 (1992); *see also Gardiner Solder Co. v. SupAlloy Corp., Inc.*, 232 Cal. App. 3d 1537, 1542 (1991) ("One person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received retained, or appropriated, where it is just and equitable that such restitution be made."). However, the mere fact that "one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two [parties], it is *unjust* for the person to retain it." *First Nationwide Savings*, 11 Cal. App. 4th at 1663.

To that end, where the party seeking restitution "acts . . . in protection or improvement of his own property, any incidental benefit conferred on the defendant is not unjust enrichment." After all, "equity does not create a duty to pay for a benefit one neither sought nor had the opportunity to decline, and over which one had no control." *Hartford Cas. Ins. Co. v. J.R. Marketing, LLC*, 61 Cal. 4th 988, 1000 (2015). When a party "acts simply as [he] would have done in any event, out of duty or self-interest, [he] cannot equitably claim compensation from anyone who merely happens to benefit as a result." *Id.*

Appellant argues that the bankruptcy court clearly erred in three ways. The Court disagrees with Appellant and analyzes each argument in turn.

### 1.  *Appellant's Status as Magnus's Manager*

Appellant first argues that the bankruptcy court ignored that his actions "were actions taken in his capacity as Magnus' manager on behalf of, and for the benefit of, Magnus." (Appellant's Opening Br. at 20, ECF No. 17.) But the bankruptcy court did not ignore Appellant's status as Magnus's manager. Rather, it noted several times that Appellant was functioning not just as Magnus's manager, but as the member with a "super-majority interest." (*See* 2 ER 1228.) It then stated that Appellant leveraged his super-majority interest to "act unilaterally" in a way that benefitted himself first and foremost. (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-007750-RGK | Date | April 20, 2022 |
|---|---|---|---|
| Title | *In Re: Yu Hua Long Investments, LLC, et al.* | | |

The bankruptcy court's findings are supported by the record. Appellant, concerned that his status as a mere investor would "put [him] at the end of any repayment list" should Magnus collapse, decided to cease directly investing money into the Project and instead put up collateral for large loans to keep Magnus afloat. (2 ER 837:27–28.) Loans were preferable to him because he "knew that lenders are paid before owners are paid." (2 ER 836 28–29.) When Appellant caught wind that Nelson had a plan to buy out the loans and foreclose on Magnus, he made sure to block that plan by "mov[ing] to complete the [unilaterally negotiated] Nanyang Bank transaction as quickly as possible." (2ER 838:10.) He arranged for these large loans despite the fact that it made the other managers uncomfortable, with Nelson noting to the other members that they were "[Appellant's] decision" and that the other members likely did not "have a choice." (2 ER 754.)

According to Appellant, the record shows that he, in his role as manager and not as individual, made the soundest business decisions possible in an attempt to keep Magnus afloat. But the record reflects that Appellant made a habit of eliding the legal distinction between himself and his companies. (*See* 2 ER 833:14–18 ("I was used to operating Shaanxi as I saw fit because it was my corporation. So when I sent money anywhere, it went through Shaanxi but the person actually sending the money was me and the person whose funds were being sent was me. Shaanxi was just another name and business form for me."); *see also* 2 ER 833:3–11 ("I do not keep a personal bank account . . . [m]y companies regularly receive my money, regularly store my money in banks and regularly spend my money all as if they were me personally.").) This habit seemingly repeated itself with Magnus, when Appellant leveraged his supermajority status to secure loans for Magnus (rather than continue to directly invest) because the other members were "not deserving people and . . . I needed to protect my financial interests." (2 ER 832:12–13.)

Based on these facts, the bankruptcy court's finding that Appellant acted primarily for his own benefit was not "illogical," "implausible," or "without support . . . from the record." *Hinkson*, 585 F.3d at 1262. Accordingly, the bankruptcy court's findings in this regard were not clearly erroneous.

2. *Appellant's Provision of $30,000,000 in Collateral*

Appellant argues next that it was illogical for the bankruptcy court to infer that he would have put $30,000,000 up as collateral even if he were not "required" to secure a loan for Magnus. He bases this argument on the legal principle that the incidental benefit doctrine applies only where a claimant "acts simply as [he] would have done *in any event*, out of duty or self-interest." *Hartford*, 61 Cal. 4th at 1000 (emphasis added). In other words, Appellant argues it is implausible to believe that he would have paid $30,000,000 "in any event," absent Magnus's desperate need for operating funds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-007750-RGK | Date | April 20, 2022 |
|---|---|---|---|
| Title | *In Re: Yu Hua Long Investments, LLC, et al.* | | |

But Appellant forgets a critical fact: the record shows he was the sole member of Magnus who pushed for these loans, in large part because he wanted to jump other creditors in priority. Contrary to his assertions, he was by no means "required" to secure the Nanyang Loan. He chose to do so, in a manner that was intentionally adverse to the members that were, to him, "not deserving." (2 ER 832:12.) It was therefore not clearly erroneous for the bankruptcy court to find that Appellant provided the $30,000,000 out of self-interest.

    3.    *Magnus's Ability to Refuse Appellant's Benefit*

Appellant's final argument is that the bankruptcy court ignored evidence that the other Magnus members "intentionally sought" the Nanyang Loan; indeed, Nelson himself signed off on the necessary paperwork. (Appellant's Opening Br. at 25.) But Appellant's conclusion is belied by: (1) his acknowledgement that he "single handily" [sic] negotiated the loans (2 ER 835:13–14); (2) that Appellant arranged for the Nanyang Loan "as quickly as possible" so that he could block Nelson's plan to buy out the prior loan (2 ER 838:9–10); and (3) that when it came to the Loans, Nelson told other Magnus Members that the decision was Appellant's and that he was not comfortable with the proposed terms, but that he felt like Magnus had no choice. (2 ER 754.)

The record allows for alternative inferences on this point. After all, Nelson eventually signed the Nanyang Loan documents, despite having professed discomfort about the terms. (*See* 1 ER 499.) And a logical inference from Nelson's email to the Magnus Members is that they had "no choice" because they had exhausted other financing options, not because Appellant was strong-arming them into the Loan. But this Court's task is not to reweigh the evidence anew. The bankruptcy court's findings have sufficient support from the record to avoid being implausible or illogical and were thus not clearly erroneous.

    4.    *Conclusion*

Because the bankruptcy court's findings of fact regarding Appellant's unjust enrichment claim were not clearly erroneous, and because the bankruptcy court undisputedly applied the correct legal standard to its analysis, it did not abuse its discretion in reducing Appellant's Claim No. 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-007750-RGK | Date | April 20, 2022 |
|---|---|---|---|
| Title | *In Re: Yu Hua Long Investments, LLC, et al.* | | |

### VII. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the bankruptcy court's order.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | jre/a |